■ The opinion of the court was delivered by
TilghmaN, C. J. This case comes before us on an appeal from the decree of the Orphans’ Court of Franklin county, on the settlement of the administration account of John Keyzey, junior, who was executor of the last will and testament of his father, John Key-zey, deceased.
The matter in dispute is confined to a single item of the account, and depends on the question, whether the executor, who was the devisee of a tract of unpatented land belonging to the testator, had a right to apply the personal estate, to the payment of the sum of $267 75, which was due to the commonwealth for the purchase money of the said land, interest thereon, and fees on patenting the same. The land was taken up by warrant granted to Mexan-der Lowry, in the year 1755. The general principiéis, that the personal estate is the proper fund for the payment of the testator’s debts, and shall be first applied, even to the payment of debts with which the real estate is charged. Thus, if a testator borrows *73 money and mortgages his land for it, and then dies, the heir, or devisee, may call upon the executor to exonerate the land, by an application of the personal assets to the discharge of the mortgage. But there is a distinction between debts originally contracted by the testator, and those contracted by another; for in the latter case, the land is considered as the debtor, and shall bear its own burthen. If A. purchases an estate subject to a mortgage, and dies, his personal estate shall not be applied to the exoneration of the land, unless he has done some act by which he has made the debt his own. This distinction will be found in Toller on Executors, 419, and in a note to the case of Evelyn v. Evelyn. 2 P. Wms. 664, where the cases which establish it, are collected. No doubt, the testatór may order the debt to be paid out of one fund, or the other, at his pleasure j but as there is nothing in the will of John Keyzey which shows any decided intention on this subject, the case must be governed by the general principles of the law- It is to be considered then, what was the nature df the debt, due to the commonwealth, for the land devised to the son, and how the testator was affected by it. It was not originally contracted by him, but by Alexander Lowry, to whom the land was granted. Whether Low-ry was personally liable to the late proprietaries, or whether they looked exclusively to the land, is á point on which I shall give no opinion. But I believe there is no instance in which an action was ever brought by the proprietaries, or by the commonwealth who succeeded them, for the purchase money of lands granted in the' usual form. I speak of vacant lands. The case was different, where the proprietaries made sale of their manors or reserved lands, for there they might have taken notes, bonds, or some other written engagement from the purchaser. It may be considered, however, as very clear, that even supposing the original taker up of the land to have been liable to an action for the purchase money, that liability could not extend to his assignee. For, between the assignee and the proprietaries, there was no privity of contract. The commonwealth succeeded to the estate of the proprietaries; stands in their place; has the same rights, and is entitled to the same remedies. There is an immense debt due to the commonwealth, as successors of the proprietaries, for the purchase money of unpatented lands. But it seems never to have been supposed by the legislature, that the present owners of those lands were under any personal responsibility. All the acts which have been made for the purpose of enforcing payment, have looked to the land as the debtor.. No proceedings have been directed but in rem. By the act of 9th April, 1781, sect. 6. (the first on this subject after the estate of the proprietaries was vested in the commonwealth,) it was enacted, that all arrears of purchase money should be paid by four equal annual instalments; and in case of default in payment of any instalment for the period of six months, the county commissioners were directed to issue their warrant to the sheriff of *74 the county, commanding him, after due notice, to expose the lands, or so much thereof as should be necessary to discharge the sum due, 'With interest and costs, to sale, &c. By the act of 16th Sept. 1785, the owners of unpatented lands, were permitted to give bond and security for payment of the purchase money and interest, by five equal annual instalments, in the manner prescribed by that act, and in case of neglect or refusal to give such bond and security, the lands were to be sold. By the act of 22d March, 1820, in which a new mode of proceeding is directed, for the recovery of arrears of purchase money, a suit is to be instituted in the nature of a scire facias on a mortgage against the owners of the lands, for the recovery of such sum as appears to be due, and the said suit is to be prosecuted to judgment and recovery in the usual manner. It may therefore be concluded with certainty, that no action affecting John Keyzey, the testator, personally, could have been supported for the debt due on the land devised to his son, but that the debt was a charge on the land into whatever hands it might come. Neither could any action have been supported against the executor, to affect the personal assets in his hands. Those assets, therefore, were not the proper fund for paying this debt; and consequently, were not to be applied to the exoneration of the land. The Orphans’ Court was of this opinion, and struck out of the executor’s account, the charge which he had made against the estate, of the money paid to the commonwealth, for the purchase money and patenting fees on the land devised to him. I am of opinion, that in this, the court was right, and therefore the decree should be affirmed.
Judgment affirmed.